(77 South. 851)

No. 21109.

FORD et al. v. EDENBORN.

(Jan. 28, 1918.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS ⬉35(4)—DEATH OF ENTRYMAN BEFORE PERFECTING ENTRY—INHERITANCE.

Under sections 2291, 2292, Rev. St. U. S. (U. S. Comp. St. 1916, §§ 4532, 4543), no rights accrue to the entryman who dies before the entry is perfected, and nothing passes under the inheritance law of the state.

2. PUBLIC LANDS ⬉35(6)—RIGHTS OF WIDOW OF ENTRYMAN—STATUTE.

Where a statute of the United States gives definite rights on the happening of certain contingencies, no rights can vest until such contingencies happen, and where the wife survives the entryman and becomes his widow she acquired a right to the land, whether the entry was made before or after her marriage to the entryman.

3. PUBLIC LANDS ⬉35(6)—RIGHTS OF WIDOW OF ENTRYMAN.

And where the widow complies with the provisions of the homestead law and submits proof thereof at the local office, she acquires a vested interest in the land, to the exclusion of the heirs of the entryman.

Appeal from Fifth Judicial District Court, Parish of Winn; Cas Moss, Judge.

Action by Mrs. O. T. Ford and others against William Edenborn. Exception of no cause of action sustained, and plaintiffs appeal. Affirmed.

Mathews & Peters, of Winnfield, for appellants. Stubbs, Theus, Grisham & Thompson, of Monroe, for appellee.

SOMMERVILLE, J. Plaintiffs, the children of James A. Smith and his wife, Mrs. Amanda Smith, allege that they are owners, as heirs of their deceased father, of an undivided one-half interest in the E. ½ of the S. E. ¼ of section 10, and the W. ½ of the S. W. ¼ of section 11, all in township 12 north, range 1 west, now in possession of defendant; further, that their father entered said land as a homestead during the existence of the community of acquêts and gains existing between him and their mother; that he and his family resided on the land, and cultivated it, for more than five years, during the existence of the community and prior to his death, and did all things necessary under the acts of Congress relative to a homestead entry of public land to entitle him to make final proofs and receive the patent therefor from the government of the United States; that subsequent to his death, their mother, Mrs. Amanda Smith, the widow of James A. Smith, made the required proof, and that a patent for the land was issued to her and in her name on April 3, 1893; that on August 22, 1899, Mrs. Smith sold the land to William Edenborn; that they and Edenborn are co-owners, and they ask that they be declared to be the owners of an undivided one-half of the property. They also ask for a partition of the same.

Defendant filed an exception of no cause of action, which was sustained, and plaintiffs have appealed.

The sole question in the case is whether the homestead fell into the community existing between Jas. A. Smith and his wife, which was dissolved by the death of Smith, after he and his family had lived on and cultivated the land for more than five years, where the widow made the final proof and obtained a patent in her name from the government.

The law is, so far as it may be necessary to quote from section 2291, U. S. R. S. (U. S. Comp. St. 1916, § 4532):

"No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time

within two years thereafter, the person making such entry; or, if he be dead, his widow; * * * proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she, or they will bear true allegiance to the government of the United States; then, in such case, he, she or they if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law."

Under the terms of the law, the widow of the homesteader was entitled to a certificate and patent to the land entered by him, after she had made the necessary proofs and taken the oaths of nonalienation and of allegiance. When she had done these things the land became her property, and she had the right to sell it to defendant. Up to that time the title was in the United States government, and not in the homesteader. It could not, therefore, have fallen into the community between the homesteader and his wife, which had been dissolved by the death of the homesteader prior to the time of making the required proofs.

In the cases of Simien v. Perrodin, 35 La. Ann. 931, and Crochet v. McCamant, 116 La. 1, 40 South. 474, 114 Am. St. Rep. 538, the court expressed the view that title was acquired and the property became an asset of the community where the community was dissolved by death prior to the making of the final proofs by the homesteader. The view thus expressed is contrary to that held in Brown v. Fry, 52 La. Ann. 58, 26 South. 748, and Richard v. Moore, 110 La. 435, 34 South. 593.

In the latter case it is said:

"It would be different if the government had issued a patent, or its equivalent—a final receiver's receipt. Then the head of the community would have acquired lands, which of necessity, under the law, fall into the community. This was the view expressed in a recent case in which the five years had elapsed, and final proof had been made. Brown v. Fry, 52 La. Ann. 58, 26 South. 748."

142 LA.—30

The last decisions referred to are in line with that rendered in Spokane Falls Ry. Co. v. Ziegler, 167 U. S. 74, 17 Sup. Ct. 728, 42 L. Ed. 79, where the court held the railway company to be a trespasser and liable in damages for entering upon defendant's lands before he had received a patent therefor, but after he had made the final proofs. The patent was issued to Ziegler before he filed the suit. The decision in the Ziegler Case is, in part, as follows:

"While it is true that at the time when the company took possession of the plaintiff's land the latter had not yet received his patent, but had only made the final proofs and filed the same in the land office of the United States, and had tendered the purchase price thereof, and had demanded from the register and receiver of said land office a final receipt evidencing his entry of and payment for said land, yet it further appears that before the plaintiff brought this suit his purchase money had been accepted and a patent from the United States for the said tract of land had been fully executed and delivered to him. The plaintiff, then, having been in possession of the land in question, and having done and performed all that the law required to give him a right to a patent before the railroad company seized the land, we think the grant of the patent, subsequent to such seizure, but before the bringing of the suit, operated to confer upon the plaintiff the right to demand and recover damages as the owner of the fee. The railroad company having taken possession without the consent of the owner, and not having instituted proceedings to condemn, was a trespasser and liable to indemnify the plaintiff in respect to his possession and title, as they were shown to exist at the time the suit was brought."

In a preceding case (Shiver v. United States, 159 U. S. 497, 16 Sup. Ct. 54, 40 L. Ed. 231), the court held that the title to the land was in the government until a patent therefor was issued. The decision therein is, in part, as follows:

"While these cases indicate that lands once appropriated to a certain purpose thereby cease to be available for another purpose, there is nothing in them to show that the United States loses its title to such lands by the first appropriation, or that they cease to be the property of the government. Upon the contrary, it was said by this court as early as 1839, in Wilcox v. Jackson, 13 Pet. 498, 516 [10 L. Ed. 264], that 'with the exception of a few cases, nothing but the patent passes a perfect and consummate title.' So in Frisbie v. Whitney, 9 Wall. 187, 193

[19 L. Ed. 668], 'There is nothing in the essential nature of these acts' (entering upon lands for the purpose of pre-emption) 'to confer a vested right, or, indeed, any kind of claim to land, and it is necessary to resort to the pre-emption law to make out any shadow of such right.' In this case, the following extract from an opinion of Attorney General Bates was quoted with approval: 'A mere entry upon land, with continued occupancy and improvement thereof, gives no vested interest in it. It may, however, give, under our national land system, a privilege of pre-emption. But this is only a privilege conferred on the seller to purchase lands in preference to others. * * * His settlement protects him from intrusion or purchase by others, but confers no right against the government.' * * *

"From this résumé of the homestead act, it is evident, first, that the land entered continues to be the property of the United States for five years following the entry, and until a patent is issued; second, that such property is subject to divestiture, upon proof of the continued residence of the settler upon the land for five years; third, that meantime such settler has the right to treat the land as his own, so far, and so far only, as is necessary to carry out the purposes of the act."

In the case of Buchser v. Buchser, 231 U. S. 157, 34 Sup. Ct. 46, 58 L. Ed. 166, where the patent issued during the existence of the community, the court held that the laws of the state of Washington with reference to the community of acquêts and gains would determine in whom the title vested.

And in McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237, where the proofs were made by the surviving widow and the patent was issued to her, it is stated in the syllabus:

"Under sections 2291 and 2292, R. S. [U. S. Comp. St. 1916, §§ 4532, 4543], the widow of the entryman is first entitled to complete the entry and obtain a patent, and a state law is not competent to change this provision and give the children of the entryman an interest paramount to that of the widow."

In the case of Wadkins v. Producers' Oil Co., 130 La. 310, 57 South. 937, on appeal to the Supreme Court of the United States, where the entryman had settled upon the land before his marriage, and his wife died before he had made final proofs and received a patent, the court said that:

"He did not acquire any vested interest in the land until he had fully complied with the provisions of the homestead law and submitted proof thereof at the local office."

And he was declared to be the full owner of the property.

[1] And, in the instant case, Jas. A. Smith not having made the required proofs, did not acquire a vested interest in the land, and his heirs could not inherit any interest therein from him.

[2, 3] In the Wadkins Case, supra, 227 U. S. 368, 33 Sup. Ct. 380, 57 L. Ed. 551, the law is fully discussed, and the opinion is, in part, as follows:

"In McCune v. Essig, 199 U. S. 382 [26 Sup. Ct. 78, 50 L. Ed. 237], we decided that the beneficiaries of the statute were (1) the entryman; (2) his widow, she performing and proving the performance of the conditions, to wit, residence and cultivation of the land for the time prescribed; and (3)—section 2292 [U. S. Comp. St. 1916, § 4543]—a child or children under twenty-one years of age. And the rights are independent; or, in other words and in illustration, as we said in McCune v. Essig [199 U. S. 389, 26 Sup. Ct. 78, 50 L. Ed. 237], the homestead claimant 'may reside upon and cultivate the land, and by doing so is entitled to a patent. If he die his widow is given the right of residence and cultivation, and "shall be entitled to a patent as in other cases." He can make no devolution of the land against her. The statute which gives him a right gives her a right. She is as much a beneficiary of the statute as he.'

"Her rights therefore are derived from the statute, but necessarily depend upon the contingency mentioned; that is, his death before perfecting his entry. If she die before then, if she does not become a widow before then, necessarily no rights vest in her under the statute. And such was the fact in the case at bar. The mother of the minor died before any right could accrue to her. To express it another way, the entry of Wadkins was perfected in his own right.

"But it is said that his right has relation to the date of his entry and must be considered as having vested then. A like contention was rejected in McCune v. Essig. A title derived from a widow was there sustained against the contention that by the entry of her husband the land involved had become community property under the state law and an undivided one-half thereof passed at his death to his daughter. The ruling is directly in point.

"It appears that Wadkins settled on the land before his marriage, but did not make a formal homestead entry of it until after his marriage, and it is hence argued that an inchoate right vested in him by his entry only; and that the entry having been made 'during the régime of the community of acquêts and gains incidental

to the marriage' the patent under the jurisprudence of Louisiana conveyed the 'full title of the government to the community.' And this, it is contended, the Supreme Court decided to be the law of the state, but considered that it could not be applied in the case at bar because the court erroneously decided that Wadkins' settlement, which occurred before his marriage, was the commencement of his right, and not the entry at the land office, which occurred after his marriage. * * *

"There can be no doubt that Wadkins' inchoate right was initiated by his settlement, and that as between him and any intervening claimant his perfected right evidenced by the patent related back to the time of his settlement (Shepley v. Cowan, 91 U. S. 330, 338 [23 L. Ed. 424]; Weyerhaeuser v. Hoyt, 219 U. S. 380, 388–390 [31 Sup. Ct. 300, 55 L. Ed. 258]), but he did not acquire any vested interest in the land until he had fully complied with the provisions of the homestead law and submitted proof thereof at the local office. Prior to that time his right was essentially inchoate and exclusively within the operation of the laws of the United States, and those laws, as we have seen, fully dealt with the subject of who should be the beneficiary of a compliance with them, thereby excluding state laws from that field. This is a manifest deduction from McCune v. Essig. There might be a curious and confusing result from an opposite ruling, as pointed out by the Supreme Court of the state in its first opinion. Suppose Wadkins had married again and died before perfecting his claim.; Could his widow have continued the required residence upon and cultivation of the land? And, if so, in what right—her own, or that of the first wife, or in both rights? Section 2291 precludes such confusion. It is a definite grant of rights, and who shall be its beneficiaries are explicitly designated and upon what contingencies and upon the performance of what conditions. Until such contingencies happen and until such performance no rights vest. It follows that the mother of Effie Bell Wadkins acquired no interest in the land."

The exception of no cause of action was properly sustained.

Judgment affirmed.