(104 So. 479)

No. 25067.

**TRUMBULL v. SAMPLE.**

(April 27, 1925. Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Public lands ⬦110—Legal title held in trust for purchaser before issuance of patent.**

Where plaintiff, seeking to recover money paid under contract of lease on ground defendant's title was defective because no patent issued as to part of land, was informed that, though no patent had been issued to defendant's predecessor, latter had purchased and entered such land, and thereafter a patent was issued, *held* that plaintiff's objection was without merit, as there was no defect in defendant's title, either before or after issuance of patent, since until patent was issued, legal title was held in trust for purchaser, who is owner of land for all intents and purposes.

**2. Public lands ⬦114(4)—Patent excluding and excepting mineral lands held ineffective to reserve minerals to United States.**

Act of Congress March 3, 1871, does not reserve nor authorize reservation of minerals found in lands granted, but simply excludes all mineral lands, unless iron and coal lands, which exclusion clause applies only to lands so valuable for their minerals as to justify expenditure for their extraction, and hence the reservation in patent issued pursuant to such act, excepting mineral lands "should any be found," did not have effect of reserving minerals to United States.

**3. Evidence ⬦11—Judicially noticed that oil and gas not discovered in paying quantities in Louisiana until about 1900.**

Court will judicially notice that oil and gas were not discovered in paying quantities in Louisiana until about 1900.

**4. Landlord and tenant ⬦22(1)—Plaintiff, failing to reject defendant's defective title within time allowed, cannot reject it after title had been perfected.**

Where plaintiff, under a contract to lease land from defendant, was required to accept or reject defendant's title within 30 days, and neither party terminated contract on expiration of such time, *held* that, after defendant had perfected his title, plaintiff could not then reject it, nor recover money paid, where he failed to fulfill terms of contract.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by M. C. Trumbull against S. G. Sample. Judgment for defendant, and plaintiff appeals. Affirmed.

W. M. Pollock, of Mansfield, for appellant.

Hall & Bullock and Pike Hall, Jr., all of Shreveport, for appellee.

ST. PAUL, J. On November 4, 1919, defendant offered to lease to plaintiff a certain 80-acre tract of land in De Soto parish, all in section 3 of township 12 north, range 11 west, for a certain cash consideration and certain royalties.

One of the conditions was that plaintiff should deposit with defendant $2,187.50. If defendant's titles proved good, said sum was to be applied against the cash consideration, or forfeited, as liquidated damages, if plaintiff failed to pay the balance thereof. If defendant's titles proved defective, said sum was to be returned, and plaintiff was to have *not exceeding* 30 days in which to examine the titles.

Which offer was accepted by plaintiff, and the deposit duly made.

**I.**

This is an action to recover the said $2,-187.50, on the ground that defendant's title to part of said lands was defective, viz.: (1) That no *patent* was issued out of the United States as to 38.67 acres thereof, described as lot 3, and (2) that the mineral oil and gas under another 30.5 acres thereof, described as lot 4, still belongs to the United States; the patent issued therefor providing (it is said) that all *minerals* beneath said lands, except "iron and coal," are reserved to the United States.

**II.**

Lot No. 3 was *"purchased"* from the United States on October 24, 1850, by William T. Fortson, who paid therefor $1.25 per acre to the register of the land office at Natchitoches,

La., and who thereupon received certificate No. 7464, declaring that, "on presentation of this certificate to the Commissioner of the General Land Office, the said William T. Fortson shall be entitled to receive a patent for the lot above described;" and defendant acquired, through mesne conveyances, from said Fortson. But no. *patent* was issued therefor until September 2, 1920.

### III.

Lot No. 4, together with other lands, was duly patented by the United States on *August 8, 1889* to the New Orleans Pacific Railway Company, as assignee of the New Orleans, Baton Rouge & Vicksburg Railroad Company; all under the provisions of section 22 of an act of Congress, approved March 3, 1871 (16 Stat. 573), entitled "An act to incorporate the Texas Pacific Railroad Company," etc., and of another act of Congress, approved February 8, 1887, entitled "An act to declare a forfeiture of lands granted to the New Orleans, Baton Rouge & Vicksburg Railroad Company, *to confirm title to certain lands*, and for other purposes." 24 Stat. 391.

Which patent declares that the United States gives and grants to said New Orleans Pacific Railway Company the several tracts of land therein described, "excluding and excepting, however, all *mineral lands*, should any such be found in the tracts aforesaid; but this exclusion and exception, according to the terms of the statute (Act March 3, 1871), shall not be held to include iron and coal." And defendant acquired through mesne conveyances, from said New Orleans Pacific Railway Company.

### IV.

Forty-five days after the offer and acceptance aforesaid, an abstract of title was completed for plaintiff, showing the above conditions, to wit, on December 19, 1919.

And the evidence leaves it in some doubt whether plaintiff ever complained of said title before that date.

Be that as it may, the fact remains that about that date, and afterwards, plaintiff's attorney, under instructions from plaintiff, was in communication with defendant's attorney "trying to get the title straightened out, * * * so as to prefect the title, if it could be done."

And, as early as February 25, 1920, plaintiff was informed by defendant that, although no patent had issued to Fortson for lot 3, yet said Fortson had purchased said lot on October 24, 1850, as mentioned above, which was confirmed 3 days later by direct telegram from Washington to plaintiff's abstract company.

As said above, the patent issued September 2, 1920 and as late as September 9, and afterwards, plaintiff was endeavoring to induce defendant to accept certain oil stocks, in lieu of money, for the balance of the cash consideration to be paid on the lease.

### V.

[1] Our conclusion is that objection to the title to lot 3, on the ground that no patent had issued to Fortson, is simply an afterthought. It was certainly *wholly* without merit after September 2d, when the patent issued; and, even from the time that plaintiff was informed that Fortson had *entered and paid for the land*, the objection (if any such was made) was purely captious and frivolous.

It is quite true that, until a patent issued, the *legal title* to the land remains nominally in the United States, and the purchaser or entryman acquires only an *equitable title;* but none the less, the United States holds such land *in trust*, and *in trust only*, for the party equitably entitled to the same, who, for all intents and purposes, *is the true owner* of said land, and may treat and be treated as

such. Broussard v. Broussard, 43 La. Ann. 923;[1] Simien v. Perrodin, 35 La. Ann. 933; Gay v. Ellis, 33 La. Ann. 249; Pepper v. Dunlap. 9 La. Ann. 137; Robertson v. Wood, 5 La. Ann. 199; Terry v. Hennen, 4 La. Ann. 458; McGill v. McGill, 4 La. Ann. 262; Beaumone v. Covington, 6 Rob. 189; Lott v. Prudhomme, 3 Rob. 293; Lefebvre v. Comeau, 11 La. 321; Newport v. Cooper, 10 La. 155; Herriot v. Broussard, 4 Martin N. S. 260.

In Laforest v. Downing, 16 La. Ann. 301, this court held that lands *sold* by the United States were no more the property of the United States than lands *patented*, quoting Carroll v. Safford, infra.

In Carroll v. Safford, 3 How. 441, 461, 11 L. Ed. 67, the Supreme Court of the United States said:

"Now, lands which have been sold by the United States can in no sense be called the property of the United States. They are no more the property of the United States than lands patented. *So far as the rights of the purchaser are considered, they are protected under the patent certificate as fully as under the patent.* Suppose the officers of the government had sold a tract of land, received the purchase money, and issued a patent certificate, can it be contended that they could sell it again and convey a good title? They could no more do this than they could sell land a second time which had been previously patented. *When sold, the government, until the patent shall issue, holds the mere legal title for the land in trust for the purchaser;* and any second purchaser would take the land charged with the trust." (Italics ours.)

In Wirth v. Branson, 98 U. S. 118, 25 L. Ed. 86, it was held that a person complying with all requisites to entitle him to a patent in a particular lot, is to be regarded as equitable owner, and hence a patent issued to another will not defeat his rights.

See, also, Cornelius v. Kessel, 128 U. S. 460, 9 S. Ct. 122, 32 L. Ed. 482; Hastings, etc., R. R. Co. v. Whitney, 132 U. S. 361, 10 S. Ct. 112, 23 L. Ed. 363; Benson Co. v. Alta

[1] 9 So. 910.

Co., 145 U. S. 432, 12 S. Ct. 877, 36 L. Ed. 762; Whitney v. Taylor, 158 U. S. 90, 15 S. Ct. 796, 39 L. Ed. 906.

There was therefore no defect in defendant's title to lot 3, either *before* or since the issuance of the patent.

VI.

[2] As to lot No. 4: The statute under which this land was granted and this patent issued (Act March 3, 1871) does not *reserve*, and does not authorize the reservation of, any minerals found in the lands granted; it simply excludes and excepts from said grant all "mineral lands," unless iron and coal lands.

But in Davis v. Wiebbold, 139 U. S. 507, 11 S. Ct. 628, 35 L. Ed. 238, it was held that the exclusion and exception of *mineral lands* from grants by act of Congress should be considered to apply only to such lands as were well known to be so valuable for their minerals as to justify expenditure for their extraction; that the patent, when issued, carries with it the determination by the proper authorities that the land patented was not subject to the exclusion and exception in said grant; that the patentee owns all minerals subsequently discovered on the land, citing Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 8 S. Ct. 131, 31 L. Ed. 182; United States v. Iron, etc., Mining Co., 128 U. S. 673, 9 S. Ct. 195, 32 L. Ed. 571.

[3] Hence the reservation in the patent. excluding and excepting all mineral lands, "should any such be found," is meaningless, since the issuance of the patent carried with it the determination of the proper authorities that the land patented was not subject to the exclusion and exception in the grant, and since this court will take judicial cognizance of the fact that oil and gas were not discovered in paying quantities in this state

for at least 10 years after the date of said patent (to wit, August 8, 1889).

There was therefore no defect at any time in defendant's title to lot 4.

## VII.

[4] Therefore the most that can be said is that, up to February 28, the *proof* of defendant's ownership of lot 3, *purchased* by Fortson on October 24, 1850, was not immediately at hand, and that, technically and captiously speaking, the title to the land was not *perfected* until September 2d, when the patent issued, which was long after the lapse of the 30 days in which plaintiff was to accept or reject the title.

As to this, however, the trial judge says:

"During all this time Trumbull had not seen Sample, had not written him complaining that the title was bad, and had not demanded the return of his money. The concern of Trumbull and Snell (his attorney) was that Sample might call off the trade because the title was not accepted within the 30-day period. * * * The evidence shows that the 30-day stipulation was ignored by both parties. Trumbull seemed anxious that the title be fixed up, and Sample equally so. It was fixed up on September 2d, and after that date Trumbull was still endeavoring to acquire the land, even seeking to get Sample to accept stock in a drilling company in lieu of the unpaid balance. It was only after this refusal that Trumbull called the deal off and demanded back his money. In other words, *he did not reject the title until same had been perfected.*" (Italics ours.)

The whole matter may therefore be summed up thus: Plaintiff had 30 days in which to accept or reject the title, and might have been called upon by defendant to do so at the expiration of that time. But defendant did not avail himself of his right to call the deal off; and plaintiff was not desirous of having it called off. The title was *apparently* defective up until February 28th, and up to that date plaintiff might still have rejected the title and demanded the money back, all in good faith. Even after February 28th,

and up to September 2d, plaintiff might still, if captiously inclined, have urged a *technical* objection to the title and demanded the return of his money.

But after that date, it was too late for plaintiff to *reject* the title, which was then *perfect*. For it is to be observed that defendant was not called upon to tender a perfect title within said 30 days, or at any time at all; but, on the contrary, it was plaintiff who was called upon to *accept or reject* defendant's title, such as it might be, within said 30 days, and defendant being, in respect to the deposit, under no other obligations than to return the same should plaintiff reject the title to the land.

In other words, as says the district judge:

"Trumbull paid $2,187.50 for a 30-day option to purchase (sic, meaning lease) the land involved if the title should be found good. If the title was found bad within that time he was to get his money back." ·

But the title was *not* found bad within that time; i. e. it was not rejected and the deal called off by plaintiff, nor did defendant attempt to call it off, by requiring plaintiff to accept or reject title to the land. And thus, in effect, the option was simply extended indefinitely, without objection by either party.

But the right to *reject* the title ceased when that title was no longer subject to any objection whatsoever, serious or otherwise; and all that then remained to plaintiff was the right to take the lease on paying the balance of the cash consideration, failing in which he had but to forfeit his deposit.

The trial judge found no merit in plaintiff's claim; nor do we.

### Decree.

The judgment appealed from is therefore affirmed.

O'NIELL, C. J., concurs in the decree.