[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 460 
These are three separate appeals, taken in three separate cases, entitled and numbered (in the court below) as above. They present two distinct issues, to be set forth hereafter. The appeal in the case first named brings up one of said issues; the appeal in the case next named brings up the other issue, entirely distinct from but somewhat dependent on the issue presented in the first named; the appeal in the last-named case simply brings up the last issue in another form, and is therefore wholly dependent on the result in the first two cases. All the facts are undisputed and are as follows:
 I.
On May 26, 1884, Clemile Doucet, then unmarried, entered 160 acres of public land, situated *Page 461 
in this state, under the public land laws of the United States. On May 4, 1886, he married Anna Lejeune under the régime of the community of acquêts and gains existing in this state, and lived with her on said lands up to the time of his death (28 years afterwards). On September 18, 1889, he made final proof as to said lands and obtained his final certificate therefor on February 20, 1890, entitling him to a patent, which he received some months later.
On December 16, 1914, said Clemile Doucet died, intestate and fully solvent; and leaving the aforesaid 160 acres of land, on which he had resided with his wife and family until his death, apparently unincumbered and free of all debts.
At the time of his death he left, as his survivors, his widow in community, the aforesaid Mrs. Anna Lejeune, and nine children born of said marriage, some of them still minors at the time, since three of them were still minors at the time this litigation began (August 4, 1926), to wit: (1) Remy L. Doucet; (2) Alphonse N. Doucet; (3) Clemile Christy Doucet; (4) Marie Doucet; (5) Lydia Doucet; (6) Adam C. Doucet; (7) Walter W. Doucet; (8) Lillian Doucet; and (9) Ethel Doucet.
 II.
About six years after the death of Clemile Doucet, the husband and father, to wit, on August 14, 1920, the three children first named, to wit, Remy L. Doucet, Alphonse N. Doucet, and Clemile Christy Doucet, all then of age, and Mrs. Anna Lejeune, widow, as aforesaid, borrowed $10,000 from Jules Menou, plaintiff in the suit last named in the caption, entitled Jules Menou v. Remy L. Doucet et al., No. 6782 of the docket of the lower court, for the reimbursement whereof the four of them gave him their joint and several (solidary) two promissory notes, each *Page 462 
for the sum of $5,000, and payable, respectively, December 1, 1921, and December 1, 1922, with interest at 8 per cent. from date and 10 per cent. attorney's fees in case of suit.
On October 24th, the makers of said notes had paid nothing on account thereof, or of the interest thereon, except $200 paid on July 17, 1923; and on November 13, 1924, said Jules Menou obtained judgment against them in solido for the full amount of said two notes ($10,000), with interest and attorney's fees, subject to a credit of $200 as aforesaid, to wit against Remy L. Doucet, Alphonse N. Doucet, and Clemile Christy Doucet, and against Mrs. Anna Lejeune, widow as aforesaid.
 III.
Reverting now to the facts stated in paragraph I, supra, it will be observed that if the tract of land therein mentioned is to be considered as community property, i.e., as having formed part of the community between Clemile Doucet and his wife, Anna Lejeune, the latter then owns one half thereof in full ownership, the other half thereof belonging to the nine children, subject, however, to the usufruct of their mother. And in that case it will be seen at a glance that Mrs. Anna Lejeune, Remy L. Doucet, Alphonse N. Doucet, and Clemile Christy Doucet own between them a full two-thirds interest in the land, whilst the other six children own between them only the other third interest therein, subject to the usufruct of their mother.
On the other hand, if said tract of land forms no part of the community, but was the separate property of the husband, Clemile Doucet, then his widow, Anna Lejeune, has no interest therein whatsoever, and Remy L., Alphonse N., and Clemile Christy Doucet own between them only a one-third interest in said land, the other two-thirds interest therein belonging entirely to the other six children. *Page 463 
 IV.
When Jules Menou sought to execute the judgment which he had obtained, as aforesaid, he attempted to seize a two-thirds interest in said land, claiming that said land was communityproperty. He was promptly met by an injunction taken out by the other six children, who were not his judgment debtors, restraining him from seizing more than a one-third interest in said land; they claiming that the land was the separate property
of their father. Those injunction proceedings are entitled Mrs Marie Doucet et al. v. Louis Fontenot et al., No. 7442 of the docket of the lower court (Louis Fontenot being the sheriff in charge of the execution). The trial judge held with the plaintiffs in injunction, and Jules Menou appeals. The issue brought up by that appeal is therefore whether, under the facts stated, the 160 acres of land formed part of the community between Clemile Doucet and Anna Lejeune, his wife, or were the separate property of said Clemile Doucet.
 V.
In Ford v. Edenborn, 142 La. 927, 77 So. 851, this court held that:
 "Under sections 2291, 2292, Rev. St. U.S. [43 USCA §§ 164, 171; U.S. Comp. St. §§ 4532, 4543], no rights accrue to the entryman who dies before the entry is perfected, and nothing passes under the inheritance law of the state."
That "no rights accrue to the entryman who dies before the entry is perfected," and that, therefore, there is nothing to pass under the inheritance law of the state, is the only and inevitable conclusion to be drawn from the citations relied upon, to wit, McCune v. Essig, 199 U.S. 382, 26 S. Ct. 78, 50 L. Ed. 237, holding (syllabus) that, "under sections 2291 and 2292, Rev. Stat., the widow of the entryman is first entitled to complete the entry and obtain a patent, and a state law is not competent to change this provision *Page 464 
and give the children of the entryman an interest paramount to that of the widow"; and Shiver v. United States, 159 U.S. 491, 16 S. Ct. 54, 40 L. Ed. 231, holding that "the land entered continues to be the property of the United States for five years following the entry, and until," etc.
And the time when the land entered ceases to be the property of the United States and becomes the private property of the individual is when the final proof is made and the final certificate issued. See the authorities cited in Trumbull v. Sample, 158 La. 629 (par. V), 104 So. 479.
Hence it has been held that where the land was entered during the marriage, but the final proof was made by the wife after the death of the husband, the land became the separate property of the wife and did not fall into the community. Richard v. Moore,110 La. 435, 34 So. 593; Ford v. Edenborn, 142 La. 927, 77 So. 851. And again, that where the husband entered the land during the marriage but the final proof was made and the certificate issued to him after the death of the wife, the land became the separate property of the husband and did not fall into the community. Industrial Lumber Co. v. Farque, 162 La. 793,111 So. 166. In Smith v. Anacoco Lumber Co., 157 La. 466, 102 So. 574, the court approved the doctrine that the title vested at the time the final proofs were made, not at the time the land was entered; for the statement of the case followed that the husband had entered
the land during the marriage, and if that had sufficed to make the land community property this court would not have wasted its time over the other inquiry involved. The only case holding that the time of entering the land fixes its status as community or separate property is Crochet v. McCamant, 116 La. 1, 40 So. 474, 114 Am. St. Rep. 538. That case has been twice criticized. Ford v. Edenborn, 142 La. 927, 77 So. 851; Smith v. *Page 465 
Anacoco Lumber Co., 157 La. 466, 102 So. 574. It is now formally overruled.
To follow the doctrine of that case would lead to this consequence, that if at the time Clemile Doucet entered the land he had been married to a first wife who had died or divorced him shortly afterwards and before he married Anna Lejeune, then the land would now belong one-half to that other woman, or to her children by him or by another, and one-half to the children of Clemile Doucet himself, to the entire exclusion of Anna Lejeune, who never could have acquired an interest in said land unless her husband died without completing the entry. And thus this remarkable state of affairs would have prevailed, that the first community would not have been destroyed by the dissolution of the first marriage, but only by the dissolution of the second marriage.
In Succession of Fay, 161 La. 1022, 109 So. 824, this court was asked to involve itself in a proposition tending that way, but declined to do so. And properly so; for if those who own and purchase lands in this state cannot rely on the public records as they appear to read, and on the plain provisions of the law (R.C.C. art. 2402) that it is the time at which the title vests which must be looked to in determining the status of property, then land titles in this state are mere loose leaves to be scattered by any passing wind. But it is not so. Cf. Succession of Goll, 156 La. 910, 101 So. 263, and authorities there cited; Trichel v. Home Ins. Co., 155 La. 459, 99 So. 403, and authorities.
In this case the entry was made before the marriage, but the final proof was made and final certificate issued during the marriage, and hence the title to the land passed out of the United States and into the husband during the marriage. We therefore hold that the land was community property and not the separate property of the husband, *Page 466 
and the judgment below, which holds the contrary, will be reversed.
This means, of course, that Menou had a right to seize a two-thirds interest in the land, instead of only a one-third interest as he was allowed to do.
 VI.
The case secondly named in the caption, to wit, Mrs. Anna Lejeune v. Louis Fontenot et al., No. 7443 of the docket of the lower court, is in form a separate suit, but in substance a mere intervention in the suit first named (No. 7442). Mrs. Anna Lejeune, widow of Clemile Doucet, joins the plaintiffs in the first-named suit, urging that the land is the separate property of her husband and not community property, claiming, however, in any event a homestead exemption of $2,000 whether said land be the one or the other.
Her claim, if said land be found to be separate property, is based on that clause of the constitutional provision relative to homestead exemptions, reading as follows:
 "The benefit of this exemption may be claimed by the surviving spouse, or minor child or children, of a deceased beneficiary. Const. 1921, art. 11, § 1, in fine; Const. 1898, art. 244; Const. 1879, art. 219."
This provision first appeared in the Constitution of 1879, and was evidently intended to meet the conditions prevailing and the ruling of this court in Briant v. Lyons, 29 La. Ann. 64, decided in 1877, by which, if the husband died pending his claim for the $2,000, under Act 52 of 1865, Ex. Sess. (R.S. § 1691), the widow and minor children were shut out and relegated to their claim for half that sum ($1,000) under the provisions of R.C.C. art. 3252.
With that in mind the constitutional provision interprets itself. Cf. Smith v. Jenkins, 147 La. 437, 85 So. 68. It was certainly never intended to continue the homestead indefinitely in favor of a surviving spouse, regardless *Page 467 
of changed conditions. Baker v. Davis, 143 La. 215, 78 So. 473.
"On the other hand, there is nothing in the Constitution to deprive the widow of the benefit of the exemption in her own right, being now the head of a family and having other persons dependent upon her for support." Smith v. Jenkins, supra; Tinney v. Vittur, 134 La. 551, 64 So. 407, and authorities; Milliken 
Farwell v. Roger, 138 La. 826, 70 So. 848; Adams v. McCoy,140 La. 30, 72 So. 797.
In all the cases cited the property had been community property, and the surviving spouse owned one half in full ownership and held the other half in usufruct, as in this case. Property so held is not held in indivision within the meaning of the jurisprudence declaring that homestead rights cannot be predicated on property held in indivision. The chief reason of that rule (see Henderson v. Hoy, 26 La. Ann. 156), to wit, that the sale of property held in indivision can always be forced, has no application to property held as above said. Succession of Glancey, 112 La. 430, 36 So. 483; Smith v. Nelson, 121 La. 170, 46 So. 200; Succession of Bolan, 158 La. 911, 105 So. 10. A tenure of that kind has certainly all the elements of ownership
sufficient to insure the accomplishment of the purpose intended, to wit, to secure for the head of a family "a `home' beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor and industry." Hebert v. Mayer, 48 La. Ann. 938, 20 So. 170. And since a Constitution is generally written in broad terms, the language thereof ought always to be liberally construed if necessary to accomplish its object. "Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects be deduced from the nature of the objects *Page 468 
themselves." M'Culloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579.
It is not necessary in this case to go as far as in Harrelson v. Webb, 124 La. 1007, 50 So. 833, 134 Am. St. Rep. 529, where the court held that the homestead might be claimed even after the right of usufruct had been lost by the remarriage of the surviving spouse, for in this case the surviving spouse has not remarried.
Suffice it to say that we are of opinion that in this case the surviving widow is entitled to a homestead in her own right.
We are therefore of opinion that the judgment in the case secondly named in the caption, which allows Anna Lejeune $2,000 out of the proceeds of sale, should be affirmed.
It is true that, owing to the peculiar slant which this case has taken, the $2,000 allowed her appears to come mostly out of the share of her three major children, codebtors with herself; for the one-third interest which was sold by the sheriff and the proceeds of which are still in his hands, was sold as their
property. But since her codebtors are without interest in the matter, and since she cannot get the amount twice, but only once, it is immaterial whether she get her $2,000 now and out of the one-third which has already been sold, or whether she shall wait until the other one-third be sold and take her $2,000 out of the whole proceeds. We will therefore make no change in the judgment since the result would be exactly the same in either case.
 VII.
In the case last named in the caption, Jules Menou v. Remy L. Doucet et al., No. 6782 of the docket of the lower court, the plaintiff took a rule on the sheriff and Mrs. Anna Lejeune to show cause why the $2,000, claimed by Mrs. Lejeune and held by the sheriff, should not be paid over to him. From what we have said, it follows that the trial judge properly dismissed said rule. *Page 469 
 Decree.
The judgment appealed from in the case entitled Mrs. Marie Doucet et al. v. Louis Fontenot et al., No. 7442 in the court below, is therefore reversed, and it is now ordered that the demands of the plaintiff therein be rejected at their cost in the court below.
The judgments appealed from in the cases entitled Mrs. Anna Lejeune v. Louis Fontenot et al. and Jules Menou v. Remy L. Doucet et al. (Nos. 7443 and 6782 in the court below) are affirmed, the costs of the court below in both cases to be paid by said Jules Menou.
And it is further ordered that the costs of this appeal be paid one half by said Jules Menou and the other half by the plaintiffs in the case of Marie Doucet et al. v. Louis Fontenot et al.
OVERTON and LAND, JJ., dissent.