190 So. 217

## RECONSTRUCTION FINANCE CORPORATION v. TANGIPAHOA PARISH SCHOOL BOARD.

### No. 35203.

May 29, 1939.

Rehearing Denied June 26, 1939.

Bolivar E. Kemp, Jr., and Carroll Buck, both of Amite, for appellant.

Samuel Goodman, R. Bland Logan, Hugh H. Brister, and Rene Nicaud, all of New Orleans, and Ponder & Ponder, of Amite, for appellee.

ROGERS, Justice.

The Tangipahoa Parish School Board appeals from a judgment for $44,070.43 in favor of the Reconstruction Finance Corporation. We find no error in the judgment.

The Reconstruction Finance Corporation alleges in its petition that it is holder in due course for value of two promissory notes, one for $17,143.21, and the other for $26,927.22, aggregating $44,070.43, executed by the Tangipahoa Parish School Board to the order of the Tangipahoa Bank & Trust Company and by that bank endorsed in blank. Plaintiff alleges that the notes sued on are secured by the pledge of certain described certificates of deposit of the Amite and the Hammond branches of the Tangipahoa Bank & Trust Company. Plaintiff further alleges that the notes were executed by the president and secretary of the defendant school board, both of whom were duly authorized. The notes, each bearing an endorsement referring to the resolution of the school board, are attached to and made part of the petition.

The defendant school board first filed an exception of no right or cause of action which was overruled. With reservation of all its rights under the exception, defendant then filed its answer.

Contending that the trial judge erred in overruling its exception, defendant specially reurges the exception on this appeal.

Defendant's exception of no right or cause of action is predicated upon the contention that under Act No. 19 of 1926, as amended and re-enacted by Act No. 179 of 1932, all notes evidencing money borrowed by the parish school board must be signed by the president and the treasurer of the board, and that those officials are prohibited from executing notes in excess of the authority granted by resolution of the board; that the law prohibits school boards from authorizing loans in excess of its budget of probable revenues except in cases of emergency and then only on a two-thirds vote of the entire membership of the school board. Defendant contends that all matters touching the authority of the president and secretary of the defendant school board, togeth-

er with the purpose and the reason for the execution of the notes sued on and the number of the members of the board agreeing thereto, should be set forth in the petition and that the failure of the plaintiff to do so is a fatal defect calling for the dismissal of its suit.

Defendant's contentions are more in the nature of contentions to be urged on the merits than on exceptions. The petition alleges that the notes were executed by the defendant school board for value received and that they were signed by the president and the secretary, who was also the treasurer, both being duly authorized. The notes, made part of the petition, and the resolution, made part of the notes, speak for themselves. If they do not represent the true situation, or if they evidence ultra vires acts of the school board or its officers, those things are matters of defense to be established under proper allegations on the trial of the case. The exception of no right or cause of action was properly overruled.

Turning to the merits, we find from our examination of the record that the defense urged to plaintiff's action as set up in the answer is substantially that the Tangipahoa School Board and the Tangipahoa Bank & Trust Company entered into an agreement prior to the execution of the notes sued on, under which the school board was to receive the full amount of its deposits in the Amite and Hammond branches of the Tangipahoa Bank & Trust Company, which deposits the bank was attempting to "freeze"; that the school board was to execute its promissory notes

in favor of the bank for the exact amount of the deposits attempted to be frozen, and that the bank would retain the certificates which it attempted to issue in lieu of the deposits, with the understanding that in executing the notes the school board would not assume, nor would it be held to, any liability whatsoever; that the school board did not receive any consideration for the execution of the notes, and that the only effect of the transaction was to restore to the school board its funds then in the custody of the bank. There are alternative pleas set out in the answer, charging that the acts of the school board were illegal and averring that the judgment, if rendered against the defendant, should be restricted to the collateral referred to in the resolution of the school board. Plaintiff filed a plea in bar and a plea of estoppel to these defenses.

Contending that the notes sued on, having been acquired by plaintiff after maturity, were subject to all the equities which could be urged against the original payee, the defendant, over plaintiff's objection, was permitted to introduce parol evidence for the purpose of establishing the agreement which the school board alleged it entered into with the bank prior to the execution of the notes.

We do not find it necessary to pass on the correctness of the ruling of the trial judge admitting, over plaintiff's objection, the parol evidence offered by defendant in support of the averments of the answer. With all the alleged objectionable evidence before him, the trial judge found against the defendant and held defendant

liable on its notes. From our examination of the record, we think the findings of the trial judge and his judgment based thereon are correct.

There was no evidence produced on the trial of the case showing or tending to show that any fraud was perpetrated upon the school board. The facts as we find them from the record are as follows: In the month of December, 1932, the Amite Bank & Trust Company and the Hammond Bank & Trust Company went into liquidation. At that time these banks were holding on deposit certain funds belonging to the Tangipahoa Parish School Board. As the result of the financial difficulties in which the banks found themselves, all their deposits, including the deposits of the school board, became frozen accounts. The Tangipahoa Bank & Trust Company was then organized and purchased the assets of the five banks operating in the Parish of Tangipahoa. Among those banks were the Amite Bank & Trust Company and the Hammond Bank & Trust Company. All the depositors of the vendor banks, including the school board, received from the Tangipahoa Bank & Trust Company twenty per cent of their frozen accounts in cash, and the remaining eighty per cent of the deposits in deferred certificates of deposit issued by the Tangipahoa Bank & Trust Company, the maturities of the certificates being fixed at 17, 29, 41, and 53 months after December 19, 1932. After this settlement was effected between the Tangipahoa Bank & Trust Company and the Tangipahoa Parish School Board, it became necessary for the school board to secure funds for the purpose of paying the salaries of teachers and other obligations of the board due and payable during the months of December 1932 and January 1933. Accordingly, on January 17, 1933, the school board, with thirteen of its sixteen members present, unanimously adopted a resolution to borrow from the Tangipahoa Bank & Trust Company, or any other bank or banks, party or parties, the sum of $44,070.43 for the purpose of paying the salaries of teachers and meeting the other requirements of the board. The president and the secretary of the school board were authorized to execute two notes in favor of the lending bank or banks, or party or parties for the amount of the notes which were to bear interest at two per cent per annum and to mature on July 1, 1933. The resolution further provided that the notes of the school board were to be secured by the alleged certificates of indebtedness issued to the school board for the frozen deposit remaining in the Amite and Hammond branches of the Tangipahoa Bank & Trust Company.

The Reconstruction Finance Corporation advanced a large sum of money to the Tangipahoa Bank & Trust Company and received as security for the loan a number of notes and other obligations held by the bank. Among the securities transferred to the lending corporation were the notes of the Tangipahoa Parish School Board with the attached and pledged certificates of deposit.

The school board received from the Tangipahoa Bank & Trust Company the money represented by the notes sued on

and presumably used it for the purpose for which it was borrowed. When the Tangipahoa Bank & Trust Company itself was subsequently closed by the State Bank Commissioner, the school board, together with other depositors in the bank, received a dividend of about thirteen per cent on their frozen deposit. There is no law or authority under which the Tangipahoa School Board could be given preference over its fellow depositors in any of the liquidated banks and no such preference was given.

 It appears from what we have said that the principal defense of the school board, that the money received from the Tangipahoa Bank & Trust Company was not borrowed money but merely the school board's own money which had been frozen in the Amite and Hammond Banks, and that therefore the adoption of the resolution and the execution of the notes were merely idle gestures, is untenable. The other defenses set up by the school board attacking the validity of the notes are equally untenable.

A parish school board is empowered to incur obligations and to exceed its revenues in a financial emergency on a two-thirds vote of its entire membership. Act No. 179 of 1932. In this case the emergency existed, more than two-thirds of the membership authorized the loan, and the loan was consummated. The resolution was regularly adopted, the loan was regularly made, the notes were regularly executed, and the school board received, in cash, the money called for by the notes. The agreement between the school board and the bank has been ex-

ecuted and the school board has received the benefits accruing to it by the contract. Neither law, equity nor good conscience will allow a contracting party to receive the benefits and at the same time escape the obligations of a contract. Burk v. Livingston Parish School Board, 190 La. 504, 182 So. 656; Turfitt v. Police Jury of Tangipahoa Parish, 191 La. 635, 186 So. 52.

We find no merit in the contention of the school board that the judgment in favor of plaintiff should be restricted to the collateral attached to the notes sued on. Neither the resolution nor the notes executed in pursuance thereof contained any such restriction.

For the reasons assigned, the judgment appealed from is affirmed.

PONDER, J., absent.