**LAND v. ACADIAN PRODUCTION COR-
PORATION OF LOUISIANA (LAND,
Intervener).**

Civil Action No. 648.

District Court, W. D. Louisiana,
Opelousas Division.

Oct. 6, 1944.

John R. Land, Jr., of New Orleans, La., Lessley P. Gardiner, of Opelousas, La., and J. H. Jackson, of Shreveport, La., for plaintiff.

Samuel J. Tennant and Geo. T. Fisher, both of New Orleans, La., for defendant.

Geo. S. Graham, of New Orleans, La., for intervener.

PORTERIE, District Judge.

In these proceedings, John R. Land, Jr., a lawyer, filed action for the appointment of a receiver for a certain oil, gas, and mineral lease covering property situated in St. Martin Parish, Louisiana. Complainant also asked to be adjudicated the owner of an undivided interest in the lease by virtue of two written contracts for professional services entered into with defendant. The contracts were alleged in Article 4 of the complaint and were attached and made a part of the complaint.

Summary judgment was rendered by this court on June 25, 1942, and the judgment was appealed to the Fifth Circuit Court of Appeals. See Acadian Production Corporation of Louisiana v. Land, 136 F.2d 1. The appointment of a receiver was refused in the district court and no appeal was sought on that refusal.

The entire printed record of the appeal has been placed in this record by complainant. The complainant on the appeal had designated "the complete record and all proceedings, pleadings, evidence and exhibits filed in the action." (Exhibit, Printed Transcript No. 10,513, page 182.) However, there came to be excluded, although included within the designation, all evidence adduced and proceedings had on the trial of this original cause on June 15, 1942, including the findings of fact and conclusions of law given for the summary judgment. Complainant has offered the entire transcript of these former proceedings at the trial of this case on remand. Upon objection, a portion of the transcript has been excluded. Perhaps the summary judgment would have met with better fortune on appeal, if the full and proper record had reached the appellate court.

A motion for judgment on the pleadings and a plea of estoppel were filed by the complainant. The motion for judgment on the pleadings was overruled; the plea of estoppel was referred for decision after the trial, but before passing on the merits, of the case.

Before trial, defendant was permitted to amend its answer.

After complainant had completed his evidence on the main demand, defendant filed

a written motion for involuntary dismissal, which in the main alleged that complainant had failed to prove the acquisition by the Acadian Production Corporation of Louisiana, the defendant, of the mineral lease in dispute. The motion for involuntary dismissal was overruled, because counsel for defendant had admitted into evidence without objection the duly certified copy of the petition filed in the Sixteenth Judicial District Court, Parish of St. Martin, State of Louisiana, under its Docket No. 13,707 to which petition was attached as Exhibit "A" and made a part, a certified copy of the assignment by Iberia Petroleum Corporation to Acadian Production Corporation of Louisiana of the interest alleged in the complaint and admitted in the original answer filed by the defendant. The certified copy of the petition and assignment was filed herein as "Land Exhibit No. 2."

At the trial, complainant, before offering any evidence as to services performed as required by the opinion of the Fifth Circuit Court of Appeals, filed a written memorandum in connection with plaintiff's position in offering evidence as to services rendered under written contract, and then offered his evidence for the limited purpose of showing a valuable consideration flowing from complainant to defendant under the written contracts. All of this evidence is in writing and is designated "Land Exhibit Numbers 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 20."

There have been filed the original petitions and answers, the petitions for writ of certiorari, and prohibition and mandamus, other numerous pleadings and the extended briefs showing that Mr. Land gave much study, labor, and time to his employment, and that his effort was well-directed and successful, as proved by the fact of the favorable compromise.

The above work fully sets out the cause of action of the complainant, and attests a legal effort so ably prepared that a successful compromise resulted. The complainant is paid in kind from the fruit of his labor.

Defendant offered carbon copies of letters between the complainant and the defendant. These are answered by the complainant by his letter dated August 19, 1941. The answer is sensible and logical. The attorney had worked hard in building his suits and was then ready to serve successfully his client. He was not neglectful by the sought delay caused by his sickness.

Further, we have the uncontradicted testimony of John R. Land, Jr., to the effect that a trial on the merits of the case No. 13,707 of the Sixteenth Judicial District Court was continued by other counsel in the case on July 21, 1941, and again on November 28, 1941, to December 15, 1941. The sole effort made by the complainant to continue the case was by written motion, on December 15, 1941, with doctor's certificate attached. This was opposed by the other counsel employed by Acadian Production Corporation of Louisiana to handle the case; naturally, the written and filed motion was overruled by the trial judge.

The testimony of Mr. James L. Helm, defendant's witness and one of the attorneys present, is clinching on this point:

"Q. Mr. Helm, do you recall whether or not there was a motion for continuance signed by Mr. Land on the occasion of December 15, 1941, when the matter came up? A. Yes, there was.

"Q. Was that argued and opposed by other parties representing Acadian Petroleum Corporation? A. As I recall, I believe that Mr. Gaudin, who represented the Acadian, stated that Mr. Land was no longer a resident of the State of Louisiana, and that he and Mr. Minos Armentor, had been employed by the Acadian Company to handle the litigation in that case.

"Q. Did those counsel request the Court to overrule the motion for a continuance filed by Mr. Land, and which the Judge overruled the motion? A. As I recall, I think Counsel did ask to overrule it and the Judge did overrule it."

In answer to a question asked Mr. Helm by Mr. Tennant, counsel for defendant, Mr. Helm testified that neither Mr. Dan Debaillon, nor himself, who represented Iberia Petroleum Corporation, plaintiff in the suit No. 13,707, made any statement whatever in reference to the request for the continuance. (Exhibit Printed Transcript No. 10,513, pages 144, 145.)

The testimony of Mr. C. S. McKendrick, secretary-treasurer of the defendant company, corroborated the testimony of Mr. Helm. He said that he had employed on behalf of Acadian Production Corporation, Mr. Gaudin and Mr. Armentor to handle the litigation; that the two lawyers opposed the motion to continue filed by the complainant; and that Mr. Gaudin actually in open court dictated the "Stipu-

lation Made Among Counsel" which compromised and settled all litigation covered by the contracts for the professional services.

What happened after the trial judge in the state court overruled the motion for a continuance? Did defendant with its new counsel, after eliminating the possibility of complainant participating, proceed with a trial on the merits of the case? No, no trial on the merits has ever been had in the proceeding No. 13,707. The new counsel, with Mr. F. W. Gaudin actually dictating the compromise agreement into the record in open court, compromised and settled not only case No. 13,707, but also all litigation pending between Iberia Petroleum Corporation and Acadian Production Corporation of Louisiana, as well as other litigation growing out of the mineral lease. No witness has ever been sworn to testify in case No. 13,707 on the merits to this day. The testimony of C. S. McKendrick at the trials on June 15, 1942, and on April 27, 1944, and likewise the testimony of John R. Land, Jr., contain these facts. Article 5 of the complaint, in which "Stipulation Made Among Counsel," Exhibit "B," is pleaded, and Article 5 of defendant's original answer, in which it is alleged that the instrument is the best evidence of its contents, support these facts. "Exhibit B," received and filed in evidence by defendant on December 15, 1941, in case No. 13,707, as defendant's exhibit "D-1" and the minutes of the Sixteenth Judicial District Court, Parish of St. Martin, State of Louisiana, complainant's exhibit "P-12" prove these facts.

The evidence is that complainant performed any and all services required of him under both of the contracts for professional services up to December 15, 1941. The testimony of defendant's witness, C. S. McKendrick, at the trial on April 27, 1944, was to the effect that the professional services, in connection with both contracts, had been performed in a most proficient manner, in fact the witness went so far as to state that had complainant been able to attend the trial on December 15, 1941, he believed case No. 13,707 would have been won on the merits. New counsel then compromised and settled the case as evidenced by "Stipulation Made Among Counsel" and in this stipulation fully protected the interest of John R. Land, Jr., the complainant. If the defendant or its new counsel thought that there had been any neglect of duty on the part of John R. Land, Jr., on December 15, 1941, why did the defendant through its new counsel so completely protect the interest of John R. Land, Jr., in the "Stipulation Made Among Counsel," entered into and filed in the record in case No. 13,707? They used the following language:

"* * *, that any right which John R. Land has or may have in any of these matters is not considered as being affected by this compromise agreement."

"It is the intention of the parties to settle and compromise and dismiss all litigation between or among them whether mentioned herein or not, the Acadian Production Corporation of Louisiana not to be considered as divesting John R. Land of any interest he has or may have in this suit."

The evidence at the trial, including his own, fails to corroborate the statement of Mr. C. S. McKendrick in the affidavit made on January 13, 1942, approximately thirty days after "Stipulation Made Among Counsel," in the following language:

"2. John R. Land, Jr. was employed by this firm as Attorney. Mr. Land failed to show up at the final hearing of our main suit, and we intend to contest any claim that he may make under his contract as we had to employ other lawyers due to Mr. Land's failure to perform."

The testimony of defendant's witness and officer, Mr. C. S. McKendrick, was that a compromise and settlement was positively entered into by and between all parties; that it was the intention of the parties to compromise and settle all litigation between them; that he was doubtful as to whether or not the parties would fulfill the agreements made, but that the compromise and settlement was positively entered into, and that he thought his new counsel might be able to have it carried into effect. No other evidence was offered on this feature of the case by defendant.

"Land Exhibit No. 21" was filed in evidence, being an additional agreement between all parties to "Stipulation Made Among Counsel," filed three days later in the record of case No. 13,707. This was an additional ratification of the compromise and settlement as it particularly affected Frick-Reid Supply Company, a creditor

of defendant whose debt arose from operations entirely foreign to operations on the mineral lease in controversy.

Defendant placed in the record Defendant Exhibit "F," being an order of court, dated October 31, 1942, entering the names of Felix W. Gaudin and Minos H. Armentor as attorneys for petitioner in suit No. 231,129 of the Civil District Court for the Parish of Orleans, State of Louisiana, in the case entitled Acadian Production Corporation of Louisiana v. Iberia Petroleum Corporation. Defendant also offered in evidence "Defendant Exhibit G," being an order of Judge Rene A. Viosca, Judge of the Civil District Court, Parish of Orleans, State of Louisiana, dismissing suit No. 237,129. A certified copy of the petition filed in this suit No. 237,129 was offered in evidence by complainant as "Land Exhibit No. 12," showing that complainant was attorney of record in suit No. 237,129 and had instituted the suit on behalf of defendant. This suit is referred to in the first paragraph of "Stipulation Made Among Counsel" (Exhibit, Printed Transcript No. 10,513, pages 20, 21). The act of counsel, Felix W. Gaudin and Minos H. Armentor, in dismissing the suit was done in conformity with the provisions of the "Stipulation Made Among Counsel." No demand of any kind was made upon complainant to perform any service whatever in connection with this suit, and the record discloses no such demand, but, although the complainant remained counsel of record in the suit until October 30, 1942, long after the rendition of summary judgment in this case on June 25, 1942, and prior to the reversal of the summary judgment on June 1, 1943, by the Fifth Circuit Court of Appeals, yet defendant moved the Civil District Court only on October 30, 1942, to enter the names of Felix W. Gaudin and Minos H. Armentor, as its counsel, and the only act that such new counsel performed for the defendant in the case was to dismiss the suit in keeping with the "Stipulation Made Among Counsel." Any further performance by the complainant was made impossible. Complainant received no notice whatever from Messrs. Gaudin and Armentor of their being made counsel in the suit, nor of their intention to dismiss the suit, nor of the actual dismissal of the suit. Complainant obtained the information from the record when getting a certified copy of the petition to file in this suit.

Defendant offered Defendant Exhibits Numbers G–1, G–2, G–3, G–4, G–5, G–6, H–7, H–9, H–10, H–15, purporting to be sales of interests in the mineral lease in controversy, and Exhibits H–11, H–12, H–13, H–14 and H–16, purporting to be oil payments bearing on the mineral lease.

Since all of the transferees named in the purported transfers were made parties to the proceedings No. 13,707 of the Sixteenth Judicial District Court, parties to the compromise, the evidence does not excuse the defendant from owing the complainant. The transferees were parties to the "Stipulation Made Among Counsel," and the fourth paragraph of the stipulation says:

"All interested parties further agree to the recognition of all assignments and oil payments made out of their respective interests, which have been recorded as of this date."

Further, the sixth paragraph of the "Stipulation Made Among Counsel" provides as follows:

"The Counsel for the Acadian Production Corporation of Louisiana likewise agree to dismiss its suit insofar as its interest is concerned in the matter of the Acadian Production Corporation of Louisiana, against George Helis now pending in the Civil District Court for the Parish of Orleans, *it being understood, however, that any right which John R. Land has or may have in any of these matters is not considered as being affected by this compromise agreement.*" (Italics ours.)

Also, the thirteenth paragraph of the "Stipulation Made Among Counsel" reads as follows:

"It is the intention of the parties to settle and compromise and dismiss all litigation between or among them' whether mentioned herein or not, the Acadian Production Corporation of Louisiana not to be considered as divesting John R. Land of any interest which he has or may have, in this suit." (Exhibit, Printed Transcript No. 10,513, pages 21, 22, 23.)

The words, "it being understood, however, that any right which John R. Land has or may have in any of these matters is not considered as being affected by this compromise agreement," of the sixth paragraph directly recognize the assignments provided for in the fourth paragraph. The thirteenth paragraph applies also specifically to the defendant.

Exhibits H–11, H–13, H–14, and H–16 prove that the purported transfers were of oil payments in money and not conveyances of any fractional interest in fee of the lease. The complainant's fractional interest may be taken by him and the money payments remain to be paid. That is all.

■ Furthermore, as regards all of the said exhibits purporting to convey interests as well as oil payments, the objection was made that the said "Stipulation Made Among Counsel" was confected by counsel for defendant other than complainant herein, and in the event of any ambiguity contained therein, such ambiguity must be construed against defendant and the parties to such instrument.

Additionally, the International Stacey Corporation appears as the transferee of two oil payments (Defendant Exhibit No. H–12 and H–14) each in the sum of $3,000, and each payable out of 1/8 of 7/8 working interest, or a total of 25% of the entire working interest of the mineral lease. By reference to the final account filed by George J. Helis dated December 31, 1941 (Article 6 of the complaint and attached as "Exhibit C"), admitted in Article 6 of the answer (Exhibit, Printed Transcript No. 10,513, pages 4, 59, 25–37 and particularly on page 34 of the Exhibit, Printed Transcript No. 10,513), it appears that on December 31, 1941, this indebtedness due the International Stacey Corporation had been reduced from $6,000 to $1,100. Undoubtedly, by now, the indebtedness has been completely settled, and the interest pledged has been released.

Under date of April 27, 1944, defendant was permitted to amend its answer, and Article 5 was amended to read as follows:

"Your defendant denies that the said proceeding No. 13706 and 13707 of the 16th Judicial District Court in and for the Parish of St. Martin were compromised and settled as evidenced by the duly certified copy of 'Stipulation Made Among Counsel' but alleges that through inadvertence, the stipulation, which was dictated but which was never signed by any of the parties, was incomplete, in that there was not incorporated in the stipulation the fact that the stipulation would not become final until the confection of an agreement which was to be ratified by all of the parties at interest. That the said 'Stipulation Made Among Counsel' was dictated but was not signed and therefore was not a written contract and that it was the intention of all of the parties to the stipulation that the said proceeding No. 13706 and 13707 was to be continued as an open matter and that the 16th Judicial District Court was to continue to hold the said property under its writ of sequestration and through George J. Helis as Administrator under Writ of Judicial Sequestration. That moreover the 'Stipulation Made Among Counsel' itself shows that it was not contemplated that it was to dismiss proceeding No. 13706 and 13707 and that in the event that the Court should so construe the said document, which construction of the said document your defendant urges as incorrect, then your defendant alleges that it desires to prove the intention of the parties to explain whatever ambiguity there may exist."

Defendant by this amendment questions the document that it had presented to this court as Exhibit "Defendant 1" (Exhibit, Printed Transcript No. 10,513, pages 20, 135) and which it had stated in its original answer needed no explanation as the document spoke for itself. Defendant pleads the same "Stipulation of Counsel" (Exhibit "Defendant 1") in Articles 10 and 16 of its original answer, and the two articles are not amended (Exhibit, Printed Transcript, No. 10,513, pages 60, 61). Mr. C. S. McKendrick, who testified after the amendment had been allowed, did not support the allegations of the amended answer and testified that "Stipulation Made Among Counsel" (Defendant 1) was dictated by his then counsel, Mr. Gaudin, that a compromise was entered into by and between all parties, represented by eleven lawyers, and that the "Stipulation Made Among Counsel" was dictated in open court. The record discloses that the "Stipulation Made Among Counsel" (Defendant 1) was reduced into writing, as required by law, and filed in the record on the same day it was dictated.

■ The opinion of the Fifth Circuit Court of Appeals permits complainant no recovery under the contract dated May 20, 1940 (Exhibit, Printed Transcript No. 10,513, P–2, pages 15–20), on the theory that since Acadian Production Corporation of Louisiana received nothing under the "Stipulation Made Among Counsel" which compromised and settled the suit No. 13,-706, that complainant herein relinquished all of his rights under the said contract by

consenting to the said "Stipulation Made Among Counsel". This is correct and is the law of the case. Accordingly, we shall allow nothing to plaintiff under that contract.

The two contracts were a part of the records in the suits Numbers 13,706 and 13,707, when "Stipulation Made Among Counsel" was entered into by and between all parties at interest in both of the suits, and the "Stipulation Made Among Counsel" was filed and recorded in the suit No. 13,707 on December 15, 1941.

We overruled the motion of complainant for judgment on the pleadings at the time of trial. The concurrent plea of estoppel was referred to the merits of the case. We shall not rule on the latter plea, directly, as we feel its rationale and weight are recognized in the reasoning during the course of this opinion. We shall admit, however, into evidence and consider, therefore, Defendant Exhibits G-1 to G-16, both inclusive, against whose admission as evidence the plea of estoppel by complainant was directed.

■ The two strongest paragraphs of Exhibit A, also marked P-1, are quoted:

"2. That as full compensation for rendering said legal service, the party of the second part is to receive a sum equal to twenty-five (25%) percent of the amount received *in any compromise* or settlement, or recovered by judgment, at the time of the payment of settlement, provided, however, that neither the party of the first part nor the party of the second part shall have the right, without the written consent of the other, to settle, compromise, release, discontinue or otherwise dispose of such claim, or any and all suits instituted in connection therewith."

"3. That this contract is entered into by and between the parties in conformity with the provisions of Act 124 of 1906 of the Legislature of Louisiana, *and party of the first part conveys to party of the second part a twenty-five (25%) per cent interest in the subject matter of the suit, proposed suit, or claim as his fee for professional services rendered performed and to be performed in the handling of the claim."* (Italics ours.)

The contract for professional services recites the rendition of services, the defendant herein has admitted some services were rendered to it under the written contract, and the Fifth Circuit Court of Appeals so holds in its opinion. The record further discloses that the two suits, Numbers 13,706 and 13,707 were dismissed with prejudice and that further services on the part of complainant were thereby cut off. Under the contracts for professional services, after the defendant had entered into the "Stipulation Made Among Counsel," which was a compromise and settlement of the litigation in both suits by its specific terms, and operated as a dismissal of both with prejudice, complainant had but two functions he could perform, and that was to either consent in writing to the compromise and settlement, as specifically provided by the contracts or refuse to do so. The record discloses, and it is admitted by defendant that complainant herein did consent in writing to the "Stipulation Made Among Counsel," which compromised and settled both of the cases Numbers 13,706 and 13,707, thereby ratifying and confirming the compromise and settlement which his client desired, and thereby terminating any obligation due the client, defendant herein, under the contracts.

■ Complainant was confronted with the settled jurisprudence of Louisiana, established in the cases of Willis v. Melville, 19 La.Ann. 13, and Dalgarn v. New Orleans Land Co., 162 La. 891, 111 So. 271, that where there is a contract there can be no recovery on a quantum meruit. All evidence of services rendered under the written professional service contracts was submitted for the limited purpose of showing a valuable consideration flowing from the complainant to the defendant, and written memorandum with citation of authorities was filed by complainant and made a part of the record in this case prior to the introduction of any of the evidence, and this court permitted the introduction of the evidence for this limited purpose.

We rule that, under the evidence adduced by both sides, complainant is entitled to recover in accordance with his contract by authority of United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174.

From the case of D'Avricourt v. Seeger et al., 169 La. 620, 125 So. 735, which was cited with approval in the United States Gas case, supra, the following quotation is made from page 736, Southern Reporter:

"'The parties hereto do further agree that they employ the services of J. K. D'Avricourt and F. Wilfred Gaudin, to take such legal steps as may be necessary

to place the heirs in possession of the said estate and to effect a sale of the said property, within thirty days after the heirs have been placed in possession of the estate of the said decedent. The parties hereto do further agree that they will pay the said J. K. D'Avricourt and the said F. Wilfred Gaudin, the sum of ten thousand dollars each, in full settlement of all services as attorneys in the administration of the estate of the said decedent, Mrs. Henrietta Seeger, payment to be made sixty days after the heirs have been placed in possession.'"

In this case recovery of the full fees was allowed the attorneys under the provisions of Article 2040 of the Revised Civil Code of Louisiana. The professional services contracted to be performed in this cited case were not performed because the parties employing the attorneys sold privately their interest in the property.

Mr. F. Wilfred Gaudin is the same F. W. Gaudin who, Mr. C. S. McKendrick, defendant's witness, testified, dictated the "Stipulation Made Among Counsel" into the record in case No. 13,707, in which stipulation the interests of John R. Land were fully protected. Mr. Gaudin by reason of his participation in the case of D'Avricourt v. Seeger, cited supra, was very familiar with the provisions of Article 2040 of the Revised Civil Code of Louisiana, and familiar with the fact that John R. Land's rights were protected as a matter of Louisiana jurisprudence and law. It might be worthy of comment that you do not find Mr. Gaudin representing defendant as attorney in this case, although he dictated and assisted in the confection of the "Stipulation Made Among Counsel".

On the one hand, we have Mr. F. W. Gaudin for the defendant dismissing Case No. 237,129 of the Civil District Court, Parish of Orleans, State of Louisiana (Defendant Exhibits "F" and "G") and thus carrying out the provisions of the "Stipulation Made Among Counsel," while on the other hand and at the same time we find the same defendant, through other counsel in this case, contending that the "Stipulation Made Among Counsel" was not a compromise and settlement, although denominated as such by specific verbiage contained in the document, and judicially declared to be a compromise and settlement by this court and the Fifth Circuit Court of Appeals in the case No. 10,513, which latter judgment was not appealed by

defendant, is now final, and is the law of this case on remand. Defendant specifically authorized the acts of Mr. Gaudin. (Testimony of Mr. McKendrick at the trial on April 27, 1944, and Defendant Exhibit "F".)

The case of United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174, at page 176, says:

"We are therefore of the opinion that Ned Christian, by employing other counsel to represent him in this case, prevented the full performance of his prior contract with the firm of Foster, Hall, Barrett & Smith, and he is, therefore, liable under his contract with them. Article 2040, Rev.Civ.Code; D'Avricourt v. Seeger, supra; Lloyd v. Dickson, supra [116 La. 90, 40 So. 542]."

This record contains the very trustworthy testimony of Mr. James L. Helm, one of the attorneys representing one party at the compromise, not concerned here, that Acadian employed Mr. Gaudin and Mr. Armentor to handle the litigation in the state courts. (Exhibit, Printed Transcript No. 10,513, page 144.) Mr. McKendrick, defendant's officer, testified that he employed Mr. Gaudin and Mr. Armentor to handle the litigation at the trial held on April 27, 1944. The "Stipulation Made Among Counsel" recites that Mr. Gaudin and Mr. Armentor represented Acadian Production Corporation of Louisiana. (Exhibit, Printed Transcript No. 10,513, page 20.) The minutes of the Sixteenth Judicial District Court, Parish of St. Martin, State of Louisiana, for December 15, 1941, show that Mr. Armentor and Mr. Gaudin represented Acadian Production Corporation of Louisiana. (Exhibit, Printed Transcript No. 10,513, page 55.) Defendant Exhibit No. F is a motion made by Acadian Production Corporation of Louisiana entering the names of Felix W. Gaudin and Minos H. Armentor for it in the said case No. 237,129 of the Civil District Court, Parish of Orleans, State of Louisiana.

There can be no doubt whatever, that Mr. Gaudin and Mr. Armentor were employed by Acadian Production Corporation of Louisiana to handle the litigation in the state courts and within the meaning and contemplation of the holding in the case of United Gas Public Service Co. v. Christian, cited supra, such act on the part of the defendant herein prevented

the full performance of the prior contract with complainant. However, the counsel, Mr. Gaudin and Mr. Armentor, went a step beyond the requirements of the United Gas case when they actively opposed a written motion for a continuance filed by complainant in the suit No. 13,707, which motion was overruled by the local state judge. (Exhibit, Printed Transcript No. 10,513, page 55, Testimony of James L. Helm, defendant's witness, page 144.)

There is no evidence that complainant failed to perform any service required of him under the contracts. He was prevented from further performance by the deliberate act of the defendant. There is no evidence of any demand made on complainant to do anything that was possible of fulfillment.

The contracts provide for payment of the percentage specified therein in the event of "any compromise or settlement." A valuable consideration flowing from complainant to defendant is clearly shown by the extensive labor done by complainant under the written contracts. The contracts have been admitted by defendant.

Judgment will be signed declaring that complainant is entitled to recover the undivided .15039062 of the entire 7/8ths working interest in the mineral lease in controversy under the contract dated May 28, 1940 (Exhibit, Printed Transcript No. 10,513, Exhibit "A"—Also Marked P-1, pages 10–14) effective from December 15, 1941.

Now, since there is judgment by us in favor of plaintiff, the intervention of Mrs. Mae Ramsey Land, praying to be declared the half-owner of whatever her former husband recovered in the main action, has to be considered.

We find the following facts:

1. On July 11, 1941, judgment was rendered in the Civil District Court for the Parish of Orleans, State of Louisiana, granting Mae Ramsey Land, intervener herein, a judgment of separation "a mensa et thoro" from John R. Land, Jr., defendant in intervention, in these proceedings, which judgment awarded "the care, custody, and control of her minor child, namely, John R. Land, III, to her." (Exhibit, Printed Transcript, Pages 88, 89.)

2. On the same date, July 11, 1941, Mae Ramsey Land and John R. Land, Jr., appeared before George S. Graham, a notary public, and executed an authentic act (a certified copy is in evidence) of partition and compromise and settlement, partitioning numerous properties, real and personal, compromising and settling all claims for alimony in the following language: "the consideration being, the release of Mae Ramsey Land of the said John R. Land, Jr., from any claim for present or future alimony for herself, and she hereby relinquishes all rights and claims to any alimony whatever, before or after divorce."

3. This authentic act was affirmatively pleaded by the intervener and was attached to her petition. Article 3 of the petition of intervention reads as follows:

"Your petitioner alleges that in furtherance of the judgment of separation from bed and board described above that she and the said John R. Land, Jr., did appear before George S. Graham, Notary Public, in and for the Parish of Orleans, and did then and there effect a partition of the community of acquets and gains existing between them with the understanding that the said partition was to be a partition of all of the community of acquets and gains. That she attaches hereto a certified copy of the act of partition before George S. Graham, Notary Public, dated the 11th day of July, 1941, for reference." (Exhibit Printed Transcript No. 10,513, page 66.)

The act contains the following recitals:

"Personally Came and Appeared: Mae Ramsey, wife of, and John R. Land, Jr., separated from each other by judgment of separation a mensa et thoro rendered on the 11th Day of July, 1941 and signed on the 11th day of July, 1941 by the Civil District Court for the Parish of Orleans, State of Louisiana, in the proceedings entitled "Mae Ramsey vs. John R. Land, Jr." Number 239737 of Docket of said Court, severally declared that they are owners in common each for an undivided half of the following described properties, acquired by them during their marriage, and which form the community of acquets and gains:" (Exhibit Printed Transcript No. 10,513, pages 89, 90.)

"The parties declare that, the properties received by each has been mutually agreed to as a satisfaction partition of the community of acquets and gains irrespective of the values placed thereon." (Exhibit Printed Transcript, No. 10,513, page 130.)

"That by means of this partition, each is in possession and owns the property in

full ownership other than that property which is owned in indivision between them, and they discharge each other from all claims, demands, matters and things whatsoever in the premises and to the community of acquets and gains which previously existed between them, hereby acknowledging themselves, respectively, to be fully satisfied with this partition." (Exhibit Printed Transcript, No. 10,513, Page 130.)

4. The two contingent legal fee contracts of the main demand, enabled by Act 124 of 1906, one dated May 20, 1940, and the other dated May 28, 1940, are not mentioned in any way in the Act of Partition and Compromise and Settlement.

5. John R. Land, Jr., testified at the trial on the intervention. He was called as under cross-examination. Mr. George S. Graham, the attorney for intervener, was notary public before whom the authentic act was passed. Land testified that he discussed the legal fee contracts with Graham on at least two occasions, furnished copies of the contracts to Graham, who prepared the authentic act, and who had also acted as attorney for intervener in the separation proceedings. Land contended then as now that the contracts formed no part of the community of acquets and gains, because Land had acquired no property right under the contracts at the time of the partition of the community property and at the time of the compromise and settlement. Mr. George S. Graham, present and interrogating Land, did not offer to rebut the testimony of Land. Land's testimony is corroborated by a photostatic copy of a letter addressed to him by Mr. C. S. McKendrick, Secretary-treasurer of the Acadian Production Corporation of Louisiana, dated August 19, 1941, paragraph 8.

6. There was no concealment of the existence of the legal contracts by Land. Mr. Graham was furnished with copies of the legal fee contracts, and had them before him when he prepared the authentic act. Mr. Graham did not include the legal fee contracts, apparently because the contracts formed no part of the community of acquets and gains.

7. The declarations of the authentic act, quoted supra, make it clear that it was the intention of the parties to completely and finally partition the community property, and compromise and settle all rights to alimony, in the one instrument, and "dis-charge each other from all claims, demands, matters and things whatsoever in the premises and to the community of acquets and gains which previously existed between them, hereby acknowledging themselves, respectively, to be fully satisfied with this partition."

8. Land introduced into evidence a duly certified copy of petition and answer in Docket No. 251,962 of the Civil District Court for the Parish of Orleans, State of Louisiana, in the case entitled "Emancipation of John R. Land, III." This suit is a sequel to the separation suit. The answer made by Mrs. Land shows Mr. Graham as her attorney. Article IV of the petition reads as follows:

"That under date of July 11, 1941, before George S. Graham, Notary Public, an act of partition and compromise and settlement of any and all alimony due or to become due either before or after divorce, including alimony due petitioner, was executed by Mae Ramsey Land and John R. Land, Jr., the parents of petitioner, duly certified copy of the said act of partition and compromise and settlement being filed in the said Suit No. 239,737, alleged in Article III hereof; same being recorded in C. O. B. ——— folio ——— of the Conveyance Records of the Parish of Orleans, State of Louisiana."

Article Four of the answer filed by Mrs. Land is in the following language:

"Fourth: That she admits that an Act of Partition and Compromise and Settlement of any and all alimony due her was executed before George S. Graham, Notary Public, on July 11, 1941, but denies that said compromise and settlement included alimony due petitioner, and further avers that the certified copy and said Act is the best proof of its contents."

9. While this proceeding was pending with us, intervener, Mrs. Mae Ramsey Land, ratified and admitted in the State court that the Act passed before George S. Graham as Notary Public, dated July 11, 1941, was an act of partition and compromise and settlement of all of her rights.

## Conclusions of Law

1. It has been decided by this court on the main demand that no recovery will be permitted under the contract dated May 20, 1940, but that plaintiff on the main demand was entitled to full recovery under his contract dated May 28, 1940, as of De-

cember 15, 1941, the date the case No.. 13,707 was compromised and settled, in conformity with the terms of the contract, which provides that Land is to receive a "sum equal to twenty-five (25%) per cent of the amount received in any compromise or settlement, or recovered by judgment, at the time of the payment or settlement." The law of Louisiana permits the provisions of the contract. Shepherd v. Dickson, 38 La.Ann. 741, and Martinez v. Succession of Vives, 32 La. Ann. 305.

■ 2. No title vested under the contract in John R. Land, Jr., until December 15, 1941, and, consequently, the property so acquired could not form a part of the community of acquets and gains existing between Land and Mrs. Mae Ramsey Land, since the community had been dissolved by the judgment of separation a mensa et thoro on July 11, 1941.. Also, the Act of Partition and Compromise and Settlement, dated July 11, 1941, by and through which all community property was partitioned and settlement in full was made by John R. Land, Jr., and intervener, not only for her entire interest in the community property but also as a compromise and settlement decided all rights to alimony either before or after divorce. Doucet et al. v. Fontenot et al. (Lejeune v. Fontenot, Menou v. Doucet et al.), 165 La. 458, 115 So. 655, and Cupples v. Harris, 202 La. 336, 11 So.2d 609, 611.

"The only case holding that the time of entering the land fixes its status as community or separate property is Crochet v. McCamant, 116 La. 1, 40 So. 474, 114 Am.St.Rep. 538. That case has been twice criticized. Ford v. Edenborn, 142 La. 927, 77 So. 851; Smith v. Anacoco Lumber Co., 157 La. 466, 102 So. 574. It is now formally overruled.

"To follow the doctrine of that case would lead to this consequence, that if at the time Clemile Doucet entered the land he had been married to a first wife who had died or divorced him shortly afterwards and before he married Anna Lejeune, then the land would now belong one-half to that other woman, or to her children by him or by another, and one-half to the children of Clemile Doucet himself, to the entire exclusion of Anna Lejeune, who never could have acquired an interest in said land unless her husband died without completing the entry. And thus this remarkable state of affairs would

have prevailed, that the first community would not have been destroyed by the dissolution of the first marriage, but only by the dissolution of the second marriage." Doucet v. Fontenot, supra [165 La. 458, 115 So. 657].

The unfavorable criticism comes quickly against the use of the above jurisprudence, for though there be some analogy, there is a difference between the acquisition of a title to public lands upon entry and delays, and the acquisition of title to land, the subject of litigation in which an attorney was employed to be paid in kind and contingently upon success. The general presentation of the facts is quite similar, however, and fundamentally the principle of law, the question of when the property actually enters the marital community, is identical. We feel satisfied in the use of this jurisprudence in the instant case. Moreover, counsel for intervener states he "has made diligent search for a case where the facts were analogous, but was unsuccessful."

3. No evidence is in the record showing or indicating any fraud or concealment on the part of John R. Land, Jr., of the legal fee contract. To the contrary, the record discloses that Mr. Graham had full knowledge of the fee contracts at the time he prepared the authentic act, and did not include the contracts in the act as forming a part of the community of acquets and gains, apparently because the contracts formed no part of the community being partitioned.

■ 4. Where a party solemnly admits a fact by deed he is estopped from not only disputing the deed itself, but also every fact which the deed recites. Gaines v. Crichton, 187 La. 345, 174 So. 666, and cases therein cited. The deed is not attacked by intervener but is affirmatively pleaded by her, consequently the portions of the deed quoted supra are an effectual estoppel to the contentions of intervener.

5. Intervener had judicially admitted in her answer in case No. 251,962 of the Civil District Court for the Parish of Orleans, State of Louisiana, in the case entitled "Emancipation of John R. Land, III," quoted supra, that the authentic Act dated July 11, 1941, was an act of partition and compromise and settlement.

■ 6. No tender or offer was made by intervener to return the amount re-

ceived in compromise and settlement to the said Land.

7. In the event that such an offer is not made, the recipient of the compromise and settlement is estopped to assert any right under the compromise agreement. Byrne v. Hibernia Nat. Bank, 31 La.Ann. 81; Harrison v. First Nat. Life Insurance Co., La.App., 179 So. 123; and Sellwood et al. v. Phillips et al., 185 La. 1045, 171 So. 440; Reconstruction Finance Corporation v. Tangipahoa School Board, 192 La. 1059, 190 So. 217, 219.

Counsel for intervener has presented a forceful brief urging points which, if followed, would lead to different conclusions. It is our duty to review these points and express definitely the reasons for not accepting them.

■■■■ First, we agree without quibble to the principles contained in the extended quotation taken from the Succession of Wiener, 203 La. 649, 14 So.2d 475, at pages 480 and 481:

"In Louisiana, the situation is entirely different, for here the civil law prevails, and the theory of the civil law is that the acquisition of all property during the marriage is due to the joint or common efforts, labor, industry, economy, and sacrifices of the husband and wife; in her station the wife is just as much an agency in acquiring this property as is her husband. In Louisiana, therefore, the wife's rights in and to the community property do not rest upon the mere gratuity of her husband; they are just as great as his and are entitled to equal dignity. Unlike the wife's interest in the common law states, where joint tenancies and tenancies by the entirety abide, the wife's interest in the community property in Louisiana is more than a mere expectancy or hope and her husband's death is not the force that generates her title thereto and her rights therein. Over a hundred years ago, in the case of Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am.Dec. 478, this court held that the rights of the wife, as well as those of the husband, in and to the marital gains, grow out of the marriage contract itself and do not originate only when it is dissolved, and this is now our settled law, as was pointed out in the case of Phillips v. Phillips, 160 La. 813, 107 So. 584. She is the half-partner and owner of all acquisitions made during the existence of the community, whether they be property or income. She has the same privilege as her husband of disposing of her interest therein by will, and, in the absence of a will, at her death her interest in the community property passes to her legal heirs in the same manner as her husband's interest therein passes to his legal heirs in the absence of a will.

\* \* \* \* \*

"In the event of a divorce, the wife is entitled absolutely and of right to an exact one-half of the community property and the court has no discretion or power to award her less. \* \* \*

"It is obvious, therefore, that the wife's interest in the community property in Louisiana does not spring from any fiction of the law or from any gift or act of generosity on the part of her husband but, instead, from an express legal contract of partnership entered into at the time of the marriage. There is no substantial difference between her interest therein and the interest of an ordinary member of a limited or ordinary partnership, the control and management of whose affairs has, by agreement, been entrusted to a managing partner."

There is no violation of the above principles because no property right whatever was acquired by complainant under his legal contracts with Acadian Production Corporation of Louisiana, until December 15, 1941: The community of acquets and gains was dissolved and partitioned on July 11, 1941, five months prior to the time that any property right was acquired by complainant.

■■■■ We have observed that the employment of complainant was as early as the month of May, 1940, and that since his suit was filed only on April 4, 1942, quite some time after July 11, 1941, the date of his separation from intervener, he had obviously given study to, and had spent money traveling for, the case by the time of the separation. Nevertheless, he became vested with an established property right only on the date of compromise, December 15, 1941, subsequent to the separation. The compromise caused the provisions of the contract to function with the result that he became vested at that time with a fractional interest in the property. And, strictly at law, it was even later than this date of compromise, for

it should be held to be only on the date that he ratified the compromise, to-wit, February 18, 1942.

Counsel for intervener contends that the provisions of Act 124 of 1906 establishing privileges of attorneys gave the complainant, and consequently his wife, under the Civil Code, a vested interest at the very moment of his employment, citing in support Succession of Jones, 193 La. 360, 190 So. 581.

The Legislature in this Act seeks to give a specific privilege to attorneys at law for the amount of their professional fee on all judgments obtained by them, and on the property recovered by said judgments. The act then expands, stating that the attorney may be given an interest in the subject matter of the suit, "* * * whether such suit or claim be for money or for property, real, personal or of any description whatever"; further setting out that provision may be made " * * * that neither the attorney nor the client shall have the right, without the written consent of the other, to settle, compromise * * * such suit or claim"; and concluding with the provision that once recordation is made, disposition of the suit "* * * by either the attorney or the client without the written consent of the other, shall be null and void."

Until judgment is reached, we see no description in the Act of a vested interest or right, representing any degree of title in fee, which even under the civil law would place this right or interest as an asset of the community. There is no judgment yet in this case.

The case of the Succession of Jones, supra, after study and analysis, confirms our conclusion drawn upon reading the Act, of which the Jones case is an interpretation. The case holds that upon recordation of a contract of employment of the attorney for plaintiff on a contingent basis, and upon a notice to attorneys of the defendant, and sureties on a bond, such employed attorney acquired a vested interest in the judgment thereafter recovered against defendant. That which was being fought over in the Jones case was a judgment secured on a War Risk Insurance policy. In the instant case all was inchoate; there is judgment yet to be reached; nothing became vested and fixed except on the day, of settlement of compromise in open court, December 15, 1941.

Counsel brings to our attention a situation which we grant has much equity —that the complainant, whose sole business was that of practicing attorney, maintained, when he was still married to intervener, an office with customary expenses, made trips with the community-owned automobile, all paid for from community funds for quite a period of time. Since we have found as a fact that intervener and her attorney knew of this employment, there was credit given the intervener in the settlement of the community for these items of community expense. The presumption is, of course, that she and her attorney knew that if ever a contingent fee was collected by complainant, it would be all his own.

The facts brought to the knowledge of an attorney as to any matter relating to the business in which he is engaged are notice to his client, for the law presumes that he communicated that notice to his client. Rogers v. Palmer, 102 U.S. 263, 26 L.Ed. 164. The authority of an attorney to represent a litigant whom he claims the right to represent is always presumed. It may be only challenged by oath of the person denying such authority. Widow & Heirs of Brigot v. Brigot, 47 La.Ann. 1304, 17 So. 825; Smith v. Maier et al., La.App., 16 So.2d 682.

Moreover, on the contention made that an attorney has no right to compromise his client's claim (reference here being made to the act of partition of the community existing between complainant and intervener on July 11, 1941), we not only note that the authentic act was passed before intervener's attorney acting as a notary public but that intervener signed the act herself.

We do not know if the record discloses it, but it is true that the complainant has remarried. Consequently, the equity described in the doctrine of the Doucet-Fontenot case, supra, in favor of the second wife, is applicable in the instant relation.

We appreciate the provisions of our Civil Code as to what comprises community property. There could be no recognition of a maximum asset, because of the doubt existing on the conjectural

352

value of a contingent lawyer's fee, yet only in the prospective. Upon eventual determination, it cannot, retroactively, form one of the "effects which compose the partnership or community of gains." Louisiana Civil Code, Art. 2406. The reopening of the community after settlement is impractical. The existence of this possible future fee was known to the intervener and her attorney, and the presumption we must make is, in the face of the controlling law, that allowance was made in the settlement of July 11, 1941, for the expenses incurred to the community, etc., and, also, for the guessed present value of the possible fee.

We cannot entertain reconsideration of the various items of settlement contained in the notarial act partitioning the community on July 11, 1941. It is without our province to make such a review, as there has been no tender or offer to return what intervener received under it. Byrne v. Hibernia case, supra, and other cases therewith cited.

The motion to dismiss because the complaint fails to state a claim upon which relief can be granted and the plea of estoppel must both be sustained.

Judgments on the main action and on the intervention will be signed accordingly.