GARRISON, Judge.
This suit is an appeal from a concursus proceeding arising out of litigation between Jeri Lynn Richardson, individually and as natural tutrix of her minor children, against Southern Shipbuilding Corporation and its insurer for the wrongful death of Brand Richardson, her husband. Mrs. Richardson’s suit was settled prior to trial for the amount of $275,000. However, a dispute arose between her and her attorneys (Milton Brener, John Robbert, and Garon, Brener & McNeely) as to the amount of attorney’s fees to be deducted from the settlement funds. Accordingly, Southern Shipbuilding filed this concursus proceeding and deposited the settlement funds in the registry of the court.
The defendant attorneys answered the petition for concursus, alleging that they had a contract and agreement with Mrs. Richardson on behalf of herself and her minor children to pursue the wrongful death claim and that the agreed fee was to be one-third of the recovery ($275,000 X V3 = $91,666.67) whether by settlement or by judgment after trial, costs to be paid by Mrs. Richardson.
Mrs. Richardson’s answer to the concur-sus petition, on the other hand, set forth a claim against the defendant attorneys, alleging that there was never a mutual understanding or meeting of the minds between Mrs. Richardson and the attorneys concerning the fee for representing her; that at the time of execution of the alleged contract she did not have legal authority to contract a fee agreement on behalf of her *1331 minor children, and that she never contracted such an agreement on their behalf; that the defendant attorneys are entitled to quantum meruit fee only, in an amount not to exceed $10,000, from Mrs. Richardson’s portion of the settlement funds, and are not entitled to any fee from the children’s portions of the settlement funds (alternatively, that if the attorneys are entitled to a fee from the children’s portions of the settlement funds, that the fees should be based on quantum meruit, not to exceed $5,000 per child).
Subsequently, Mrs. Richardson was allowed to withdraw the settlement funds above the disputed amount, leaving the amount of $92,403.33 on deposit, which was the amount of the fee claimed by the attorneys ($91,666.67) plus costs expended by them ($736.76).
The attorneys filed a motion for summary judgment, which was denied, and the matter proceeded to trial.
After trial on the merits, judgment was rendered in favor of the attorneys in the amount of $91,667.00. Mrs. Richardson moved for a new trial, as did the defendant attorneys (who contended that the judgment in their favor should have been in the amount of $92,403.76, the amount of their fee plus costs expended by them). The motions were denied, and Mrs. Richardson filed an appeal. The defendant attorneys have answered the appeal, claiming that the judgment of the lower court should be amended to include the amount of the costs expended by them.
Mrs. Richardson specifies the following errors on appeal:
(1) That the court erred in finding that the contingent fee contract was valid on behalf of the two minor children;
(2) That the court erred in finding the contract valid as to Mrs. Richardson individually, because the contract was vague and ambiguous, did not conform with R.S. 37— 218, and there was no “meeting of the minds”; and
(3) That the court erred in allowing the defendant attorneys to introduce evidence as to quantum meruit when they failed to plead the same specifically.
First, as to Mrs. Richardson’s right to sign the contract on behalf of the children, Mrs. Richardson cites Code of Civil Procedure Articles 4061[1] and 4171[2] as the bases for her contention that she had no authority to sign the contract because she had not yet taken an oath as tutrix. It should be noted that neither of these articles, nor C.C.P. Art. 4271,[3] upon which she also relies, makes any specific reference to the entering into of binding contracts on behalf of a minor. On the contrary, only references to “official duties,” in the broadest sense, are made. She further cites several cases in support of her contention.
Assuming, arguendo, that an unconfirmed natural tutrix does not have the authority to sign such a contract on behalf of her minor children, we must look at the practical as well as the legal aspects of the matter. According to the expert witnesses, Mr. Russ Herman and Mr. Wilfred Bou- *1332 dreaux, because the law requires court approval of all actions affecting a minor’s interest, the usual procedure in settling claims on behalf of minors is to include a stipulation in the court’s judgment regarding the amount of the attorney’s fee. At the same time, apparently it is seldom that an attorney prosecuting a wrongful death claim such as this one will have the surviving parent judicially confirmed as natural tutor/tutrix until immediately preceding settlement of the case, unless such confirmation is necessary for other purposes. Thus, the situation in this case is common to a very large number of similar cases: that is, a surviving spouse prosecutes a claim on behalf of his or her minor children by signing a contingent fee contract with an attorney, for a usual fee of one-third of recovery, without that parent having been legally authorized as the minor’s tutor as required by Articles 4061 and 4171 of the Code of Civil Procedure.
The question is whether, considering the exigencies of the situation, a natural tutor/tutrix is required to be judicially confirmed prior to signing a contingent fee contract on behalf of a minor. If the natural tutor may sign such a contract only after his confirmation by the court, this requirement would have a far-reaching effect on present practices of attorneys in this locale regarding their employment on wrongful death claims. Further, it creates a tension between the mandates of the Civil Code and Code of Civil Procedure provisions regarding tutorship (the clear intent of which is to insure that all actions on a minor’s behalf be taken under color of court authority) and the holding in Cacibauda v. Gaiennie, 305 So.2d 572 (La.App. 4th Cir. 1974), which emphasizes the natural obligation of a mother to administer the minor’s estate until she causes the appointment of a tutor. However, as the court in Cacibauda stated,
“The spirit of this [C.C.P. Art. 4061] and other laws governing the rights of minors have for their purpose the conservation of the minor’s estate and the establishment of a form of security from which he can be reimbursed if his assets have been dissipated before he attains majority.” 305 So.2d at 583.
Thus, it seems clear that the mother’s obligation to conserve the minor’s estate should prevail over the technical requirements of the Code of Civil Procedure, except in cases of clear abuse. See also, Caruthers v. U. S. Safety Deposit & Savings Bank, 8 Orl.App. 93 (1910).[4]
Furthermore, as noted above, neither the Civil Code nor the Code of Civil Procedure contains any specific requirement that a natural tutor must obtain prior judicial approval of any contract, including those for attorneys’ services. The only law that appellant has been able to cite in support of this position is the case of Garden Hill Land Corp. v. Succession of Cambre, 306 So.2d 718 (La.1975). However, the issue was never confronted in that case, and mere dicta indicates the possible wisdom of obtaining prior court approval of a contingent fee contract with an attorney.
It can be strongly argued that Mrs. Richardson’s subsequent judicial confirmation as natural tutrix, and her acceptance of the benefits of Mr. Robbert’s work (that is, acceptance of the $275,000 settlement), ratified the earlier technically unauthorized contingent fee contract. There was no need for separate court approval of the contract, since the court later approved the actual compromise (as was required by C.C.P. Art. 4271).
An interesting point is raised here, but, as in the Garden Hill Land Corp. case, supra, it need not necessarily be faced. Mrs. Richardson ratified the contract she made with the attorneys by accepting the benefits of their services for herself and on her chil *1333 dren’s behalf. Her acceptance of the settlement took place after she had been judicially qualified by a proper court as natural tutrix, and she acted in that capacity. Having accepted the benefits of the contract, she cannot now repudiate it. Brock v. Town of Kentwood, 196 La. 318, 199 So. 133 (1940); Reconstruction Finance Corp. v. Tangipahoa Parish, 192 La. 1059, 190 So. 217 (1939).
As to Mrs. Richardson’s contention that the contract cannot be upheld because it does not follow the form prescribed by R.S. 37:218, this statute does not prescribe any form for a contingent fee contract, other than that it be in writing.[5] Rather, the statute provides an option to include in the contingent fee contract an agreement that neither the attorney nor the client shall compromise, settle or release the claim without the written consent of the other. The contract in this case did not include this provision, but that does not affect its validity otherwise.
“The only effect which a contingent fee contract entered into in compliance with LSA-R.S. 37:218 has is to limit to such extent as may be stipulated therein the client’s otherwise ever-existing right to settle or otherwise dispose of his suit or claim at will.” Succession of Vlaho, 140 So.2d 226, 231 (La.App. 4th Cir. 1962), cert. denied, June 20, 1962.
With regard to Mrs. Richardson’s contention that the contract was vague and ambiguous and that there was no “meeting of the minds,” it is true that Mr. Robbert’s letter of July 21, 1975, which contained the contingent fee contract, was vague and ambiguous. It contained no specific reference to the claim on which he is being retained, nor does it mention that he is to represent the minor children as well as Mrs. Richardson. Nonetheless, it is clear from the testimony that all parties understood the substance of the agreement. The only area really in contest is whether “one-third-of-recovery” applied (and was understood to apply) to settlement as well as to judgment after prolonged litigation.
This was hardly an artfully-drawn contract, and perhaps it should have made it clear that “recovery” meant recovery by settlement as well as recovery after trial. However, it appears likely from the testimony — and apparently it was believed by the trial judge — that both Mrs. Richardson and her brother-in-law (who acted as her advisor and who was subsequently appointed as undertutor for the children) understood that the one-third-of-recovery fee would apply in case of settlement, but that neither of them envisioned a resolution of this case by settlement. Mrs. Richardson’s contention that she did not understand “recovery” to apply to the possibility of settlement is basically a factual determination. In the absence of manifest error, the findings of fact in favor of the defendant attorneys must be affirmed. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Particularly telling on this point is the fact that during the time Mr. Robbert was handling this wrongful death action for Mrs. Richardson, she engaged his services to represent her on an automobile accident claim. That claim was quickly settled and *1334 no objection was made to his one-third-of-recovery fee for its settlement. Granted that Mr. Robbert did not need to expend as much time and effort for the settlement of this wrongful death action as he would have needed had it gone to trial; however, a speedy and just resolution is to his credit. The very nature of a contingent fee contract is that the attorney “earns” his one-third-of-recovery by obtaining a high recovery. Conversely, he “earns” nothing if he is not successful in obtaining a recovery.
Consequently, the award of $91,-667.00 appears justified. However, it also should have included the out-of-pocket expenses ($736.00) of the defendants-appel-lees.
For the foregoing reasons, the judgment below is affirmed, and it is amended as indicated in the preceding paragraph so as to provide a total award of $92,403.00 to defendants-appellees for their legal services and their costs.
AFFIRMED AND AMENDED.

. C.C.P. Art. 4061 reads as follows:
“Before a natural tutor enters upon the performance of his official duties, he must take an oath to discharge faithfully the duties of his office, cause an inventory to be taken, and cause a legal mortgage in favor of the minor to be inscribed, or furnish security, in the manner provided by law.”

. C.C.P. Art. 4171 reads as follows:
“Before the person appointed as tutor enters upon the performance of his official duties, he must take an oath to discharge faithfully the duties of his office. A natural tutor shall include in his oath a list of the parishes in which he owns immovable property.”

.C.C.P. Art. 4271 reads as follows:
“The tutor shall file a petition setting forth the subject matter to be determined affecting the minor’s interest, with his recommendation and the reasons therefor, and with a written concurrence by the undertutor. If the court approves the recommendations, it shall render a judgment of homologation. The court may require evidence prior to approving the recommendations.
“If the undertutor fails to concur in the tutor’s recommendations, the tutor shall proceed by contradictory motion against him. After such hearing and evidence as the court may require, the court shall decide the issues summarily and render judgment.”

. “And where a minor child is without a tutor, but has rights to assert, or property to be administered within the jurisdiction of the court, a parent vested with the care of such child may take all necessary steps to have its claims liquidated and to preserve and administer its property through the medium of the courts even though such parent may not be vested with the full authority of a duly qualified tutor.” 8 Orl.App. at 95.

. At the time the contract was signed, R.S. 37:218 read as follows:
“By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made and served by registered mail on the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance has been made.”
R.S. 37:218 was amended by Act 670 of 1975, which was not effective until September 12, 1975. However, the changes made are not material to the issues in this case.